UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN JANES,

    Plaintiff,

v.

GRAND RIVER NAVIGATION COMPANY, INC.,

    Defendant.
                                        /

Case No. 2:07-cv-14436

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT (docket no. 23)

    This is an action brought by a crew member of a Great Lakes freighter, the M/V Maumee, against the owner and operator of the freighter, for personal injuries sustained by the crew member when he was assisting in moving a cable on the deck of the freighter. This matter comes before the Court on plaintiff's motion for partial summary judgment.

### BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff Jonathan Janes brings this action pursuant to the Jones Act, 46 U.S.C. § 30104, and pursuant to the general maritime laws of the United States. He alleges in his complaint that he was injured while performing work on the defendant's vessel due to defendant's negligence and the unseaworthiness of defendant's vessel, in failing to provide him a safe place to work. Janes seeks damages, maintenance, cure and wages.

    Currently before the Court is plaintiff's motion for partial summary judgment on the issue of liability. Janes seeks an order of the Court holding that the defendant Grand River Navigation Company, Inc. ("Grand River") was negligent per se in the accident that injured plaintiff, and that such negligence caused Janes' injuries. Further, Janes seeks an order that the M/V Maumee was unseaworthy as a matter of law. He argues that the defendant

acted in violation of a safety statute by requiring him to perform work on the deck of the Maumee. Under Supreme Court precedent, where a shipowner acts in violation of a statutory duty and the violation causes in whole or in part an injury to a seaman, that constitutes a form of negligence per se, and the defendant is liable for the injuries so caused even if the shipowner was not negligent in the normal tort sense.

Grand River has argued that its actions were in compliance with Coast Guard instructions. In reply, Janes argues that the Coast Guard's instructions are violative of the statute and therefore cannot immunize the defendant. This argument raised another issue: Grand River argues that Janes' argument amounts to a request that the Court issue a declaratory judgment that the Coast Guard's interpretation of the statute is illegal. Grand River argued that because the legality of the Coast Guard's actions was brought into issue by Janes' arguments, the Coast Guard should be added as a party or permitted to intervene. The Court held a hearing on March 16, 2009, at which hearing the Court raised the issue of whether the Coast Guard was a necessary party under *Boles v. Greeneville Housing Authority*, 468 F.2d 476 (6th Cir. 1972). Following the hearing, the Court issued an order, dated March 20, 2009, notifying the Coast Guard of the issues raised by this matter and inviting the Coast Guard to either intervene or to file an amicus brief. (docket no. 37). The Coast Guard declined intervention, but filed an amicus brief with the Court on May 21, 2009. (docket no. 40). Following the filing of the Coast Guard's amicus brief, the plaintiff and the defendant each filed supplemental briefs responding to the amicus arguments.[1]

The Court has reviewed all the briefs and the relevant portions of the record and is now ready to rule. For the reasons stated below, the Court holds that partial summary judgment

---

[1] The Court hereby grants the motions of the defendant and the plaintiff to file these supplemental briefs located at docket entry 42 and docket entry 44, respectively.

2

on the issue of liability is not appropriate because the plaintiff has failed to carry his burden of showing as a matter of law that the defendant violated a safety statute by requiring Janes to work on the deck of the MV/Maumee at the time of his accident.  Plaintiff's motion for partial summary judgment will therefore be denied.

**FACTS**

These facts are taken largely from plaintiff's motion for partial summary judgment.  The defendant did not offer a counter-statement of facts, as required by the Court's practice guidelines.  *See* Motion Practice Guidelines, d.  Summary Judgment, available at http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=392.  The defendant only controverted certain facts by submitting exhibits to its response to plaintiff's motion.  The Court will deem those facts not controverted as admitted for purposes of this order.

A.  The M/V Maumee and the accident of August 29, 2007

The M/V Maumee is a Great Lakes self-unloading bulk carrier, built in 1929 and owned and operated by defendant Grand River.  Jonathan Janes was employed as a member of the crew of the M/V Maumee at all times relevant to this motion.

On August 29, 2007, Janes was participating in a procedure to prepare for unloading the Maumee when he was injured.  In order to unload the Maumee, the unloading boom with conveyor must be swung over the side of the ship either to port or starboard depending on the orientation of the vessel at the unloading port.  In order to change the boom from port to starboard, steel cables attached to the boom must be detached and moved from one side of the boom to the other, because the cable on the unloading side is significantly shorter that the cable on the opposite side that is used to retrieve the boom back.  The cables are approximately 1 ½ inch in diameter and over 1.5 lbs. per foot, and the longest is over 200 feet in length.

It appears that the method used on the Maumee to change the cables is as follows: The eye at the end of the cable attached to the boom is detached and the cable is manually pulled by four or five crewmembers, working in line, climbing up and down over the vessel's unloading hatches until the entire length of cable is pulled out of the boom. Once the last crewmember had climbed off the final hatch, the group started walking at a fast pace to gain momentum and pull the entire length of the cable free of the unloading boom.

On August 29, 2997, Janes was asked by the bosun, Shawn Pavlovich, to assist Pavlovich and two other crew members, Samuel D. Miller and Donnie Douglas, in changing the cables. When the men assembled, Janes was the last in line. The crew pulled the unloading boom cable, climbing up and down the vessel's hatches until they reached the last hatch aft. At that point, Janes was apparently still on the last hatch. Pavlovich, Miller and Douglas took off and began running with the cable. Janes lost his balance and slipped and fell on the deck. He landed on his right shoulder and sustained serious personal injury.

  B.  <u>Facts concerning Janes' employment with Grand River</u>

Janes had applied for employment with Grand River on January 10, 2007, seeking the position of conveyor/gateman. (Motion for Partial Summary Judgment, Exhibit A, Preemployment Application for Grand River Navigation Company, Inc., January 10, 2007). He was hired, and worked on a number of defendant's vessels, including the Maumee, from March 2007 until the date of his injury in August 2007.

Plaintiff has submitted the United States Coast Guard Sea Service Report, which Janes argues shows that he was employed primarily as a wiper/gateman in the engine department of Grand River's vessels, including the M/V Maumee. (Motion for Partial Summary Judgment, Exhibit B, United States Coast Guard Sea Service Report). Janes has also submitted the official United States Coast Guard Certificate of Discharge issued upon

4

Jane's discharge from the M/V Maumee following his injury on August 29, 2007, which notes the capacity in which the plaintiff was employed as "wiper."  (Motion for Partial Summary Judgment, Exhibit C, United States Coast Guard Certificate of Discharge to Merchant Seaman).  Janes has also submitted a crewmember evaluation report for Janes, dated August 6, 2007, in which Janes is evaluated by Carl N. Sharrow, the vessel's chief engineer, and Kyle W. Boos, chief conveyorman.  (Motion for Partial Summary Judgment, Exhibit D, Crewmember Evaluation Report dated August 6, 2007).

Grand River has submitted documents that support its claim that Janes was in fact a member of the maintenance department rather than the engineering department.  Grand River submits the change of crew agreement, otherwise known as the ship's articles, which Janes signed, and, which show that Janes was hired into the position of "ordinary shipman/utility ("OS/Utility"), rather than wiper.  Grand River has submitted an affidavit by Ed Wiltse, who is responsible for oversight of vessel operations and manning for Grand River.  Wiltse states that the rating of OS/Utility is a position in the ship's maintenance department, not in the engineering department.  Wiltse also states that, according to the Marine Safety Manual, the United States Coast Guard has the authority to regulate the manning of inspected and uninspected vessels such as the Maumee.

Grand River has also submitted portions of the Marine Safety Manual, promulgated by the United States Coast Guard.  The Coast Guard Marine Safety Manual states that deck or engine maintenance personnel assigned to their respective departments are "subject to the crossover prohibition of 46 U.S.C. § 8104(e)," but that "[i]f the vessel establishes an acceptable maintenance department, the persons assigned to the maintenance department are available as a ship's maintenance crew and are not subject to the crossover prohibition."  Marine Safety Manual, Vol. III, Ch. 20, pp. 20-9.  A shipowner may request that their

5

manning include a maintenance department, which request must include an operating manual for the department, describing the structure of the department, responsibilities and duties of vessel personnel, and a planned maintenance program. *Id.*, pp. 20-9 and 20-10. Grand River requested the establishment of a maintenance department in 2001, and the request was approved.

Grand River has also submitted its current Certificate of Inspection ("COI"), issued by the United States Coast Guard. The COI approved manning on the Maumee includes a maintenance department. The COI lists Janes' position, OS/Utility, as a member of the maintenance department, as does the Collective Bargaining Agreement between Grand River and the union representing seamen working for Grand River.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party

has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

## ANALYSIS

Plaintiff has moved for partial summary judgment on liability on both his Jones Act negligence claim and on his general maritime law claim of unseaworthiness based upon the defendant's alleged violation of 46 U.S.C. § 8104, the watch and manning statute. Plaintiff argues that, in requiring Janes to assist in the unloading procedure on the deck of the Maumee, defendant violated certain manning requirements set forth in 46 U.S.C. § 8104(e). Janes argues that because § 8104 has been interpreted as a safety statute, defendant's violation of the statute should be deemed to constitute negligence per se under relevant precedent. Janes argues that, in light of this violation and the relevant precedent, this Court should grant summary judgment holding that the negligence of Grand River has been established, and the only issue remaining is damages.

The Jones Act grants a seaman who suffer personal injury in the course of his employment on ship the right to seek damages and a jury trial against his employer to the same extent as the Federal Employers' Liability Act (FELA) allows claims by railroad employees. See 46 U.S.C. § 30104; *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 546-47 (1960).

The statute that Janes claims the defendant violated in requiring Janes to work on deck on the date of the accident is 46 U.S.C. § 8104(e). As pertinent to this claim, section 8104 provides:

> (d) On a merchant vessel of more than 100 gross tons...
>
> (e) ... (1) a seaman may not be--
>
>> (A) engaged to work alternately in the deck and engine departments; or
>>
>> (B) required to work in the engine department if engaged for deck department duty or required to work in the deck department if engaged for engine department duty...
>
> ...

8

>    (i) A person violating subsection (a) or (b) of this section is liable to the United States Government for a civil penalty of $10,000.
>
>    (j) The owner, charterer, or managing operator of a vessel on which a violation of subsection (c), (d), (e), or (h) of this section occurs is liable to the Government for a civil penalty of $10,000. The seaman is entitled to discharge from the vessel and receipt of wages earned.

46 U.S.C. § 8104.

Janes notes that courts interpreting the watch and manning statute such as 46 U.S.C. § 8104 have concluded that the purpose of the statutes is to promote safety at sea for the benefit of the ship's crew. *See Roy Crook & Sons, Inc. v. Allen*, 778 F.2d 1037, 1041-42 (5th Cir. 1986). Janes argues that in recognition of a reduced standard of liability, a plaintiff's burden of proof is significantly lighter under FELA, and by extension under the Jones Act, than in an ordinary negligence case. *Churchwell v. Bluegrass Marine Inc.*, 444 F.3d 898, 908 (6th Cir. 2006). Janes argues that courts have held that where a Jones Act employer violates any safety statute, the employer is liable without a showing of negligence, and such violation constitutes negligence per se. *See Kernan v. Am. Dredging Co.*, 355 U.S. 426 (1958).

*Kernan v. Am. Dredging Co.*, 355 U.S. 426 (1958) was a wrongful death suit brought under the Jones Act that involved a fire on the Schuylkill River in Philadelphia that caused the death of a seaman. The tug Arthur N. Herron caught fire when an open flame kerosene lamp on the deck of the boat ignited inflammable vapors from petroleum products on the surface of the river that apparently came from oil refineries and storage facilities on the river. *Id.* at 427. The trial court found that the lamp that started the fire was no more than three feet above the water, which violated a navigation rule promulgated by the Coast Guard that required lamps to be no less than eight feet above the water, and further found that the vapor would not have ignited if the lamp had been carried at the required height. *Id.* at 427-

9

28. The trial court held that the violation of the rule did not impose liability because the regulation at issue had to do solely with navigation and the prevention of collisions and for no other purpose. *Id.* at 428.

> The Supreme Court reversed the trial court and held that under the Jones Act,
>
> where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues. And this result follows whether the fault is a violation of a statutory duty or the more general duty of acting with care, for the employer owes the employee, as much as the duty of acting with care, the duty of complying with his statutory obligations.

*Kernan*, 355 U.S. at 438-439. Thus, under *Kernan*, if it is shown that the defendant violated a safety statute, and that violation caused, in whole or in part, the plaintiff's injury, the defendant is liable without regard for whether the defendant's negligence caused the injury. The courts interpreting the statute at issue here, 46 U.S.C. § 8104, have uniformly considered it to be a safety statute; therefore, the remaining issues are whether the defendant violated the statute by the way it employed the plaintiff and whether the violation caused the plaintiff's injury, in whole or in part.

Janes argues that this rule applies here because the incident occurred when Janes, who was employed by defendant as a gateman/wiper in the engine department was ordered to assist in a work procedure in the deck department of the vessel in violation of 46 U.S.C. § 8104(e). Janes argues that the procedure was an elaborate and hazardous function that required workers that knew what they were doing, and where frequently crewmembers had fallen off hatch covers. Janes argues that he had been ordered to engage in a procedure which he would ordinarily not be involved in except when the vessel was undermanned and it was during this procedure that he was caused to fall off one of the vessel's hatches. As for his claim of unseaworthiness, Janes argues that the same contentions that are sufficient

10

for a claim of negligence can support a claim of unseaworthiness, and therefore summary judgment is appropriate on this claim as well.

Defendant Grand River has a number of responses to plaintiff's argument. It argues, first, that plaintiff's motion fails factually because the plaintiff was not a member of the engine department; he was a member of the maintenance department. Grand River also argues that plaintiff's motion fails legally because he has failed to allege facts that show the second element required by the *Kernan* court for negligence per se, that the statutory violation caused the injury; third, it argues that a showing of unseaworthiness requires a more demanding showing of causation than a Jones Act claim and requires that the plaintiff show that his injury was proximately caused by the claimed unseaworthiness; and, fourth, it argues that there was no violation of the statute even if Janes had been engaged to work in the engine department because the only case to address the issue, *Smith v. Reinaur Oil Transport, Inc.*, 256 F.2d 646 (1st Cir. 1958), refused to impose liability in negligence for a violation of the statute. *See Smith*, 256 F.2d at 652 (predecessor of § 8104 only forbids employers from requiring members of the engine department to work on deck and does not forbid seaman from agreeing to work on deck and vice versa).

Janes' reply to this argument is that the "maintenance department" is a legal fiction created by the defendant in order to break the law. The statute only refers to a "deck department" and an "engine department," Janes argues, and there is no statutory definition or reference to a "maintenance department." He also argues that the fact that the Coast Guard authorized the creation of a maintenance department in their approval of the defendant's COI is irrelevant, because the Coast Guard has no authority to create an exemption from the strict mandate of Section 8104(e).

11

In support of his argument, Janes cites the case of *District 2, Marine Engineers Beneficial Association v. Adams*, 447 F. Supp. 72 (N.D. Ohio 1977). In *District 2*, a union brought an action to enforce the manning and watch provisions of 46 U.S.C. § 673 (predecessor to 46 U.S.C. § 8104) and 46 C.F.R. § 157.20-5. The pertinent statutory section provides that seamen on included merchant vessels "shall, while at sea, be divided into at least three watches, which shall be kept on duty...successively for the performance of ordinary work incident to the sailing and management of the vessel..." *District 2*, 447 F. Supp. at 73-74 (quoting 46 U.S.C. § 673). The complaint alleged that the defendant Cleveland Tankers Inc. was operating the oil tankers M/V Saturn and M/V Jupiter without a three-watch system for its licensed engineering officers in violation of 46 U.S.C. § 673 and 46 CFR § 157.20.5, and alleged that the United States Coast Guard and its officers had failed to execute their statutory duty to enforce the statute and regulation. *District 2*, 447 F. Supp. at 74. The Coast Guard had issued to the defendant COIs that stated that the vessels could be navigated with the engine room unattended except when in confined or congested waters, pursuant to a policy issued by the Coast Guard in a document entitled Circular 1-69. *Id.* at 76-77.

The district court granted the plaintiffs a preliminary injunction and mandamus. It held that the statute clearly required that all licensed officers aboard the subject vessels must be divided into three watches and kept on duty successively, and that the Coast Guard had a statutory duty to enforce the statute. *District 2*, 447 F. Supp. at 80. Further, it found that the unattended engine room policy authorized by the Coast Guard and executed by the shipowner violated the clear dictates of the statute. *Id.*

*District 2* involved the three-watches provision of the predecessor to § 8104, rather than the cross-over provisions at issue here, so it is not directly on point. Janes cites it for

authority for the proposition that the Coast Guard's approval of a manning arrangement is ineffective if it contravenes a clear statutory provision. *Cf. United States v. Monongahela Connecting RR Co.*, 351 F. Supp. 696, 698 (W.D. Pa. 1972) (Transportation Department lacks authority to grant exemptions from statutory requirements) .

The Court agrees with plaintiff that if the defendant manned the Maumee in violation of 46 U.S.C. § 8104(e) and such manning caused the injury, the defendant would be liable as a matter of law.  The issue before the Court, therefore is whether the plaintiff met his burden of showing that defendant violated 46 U.S.C. § 8104(e) by having Janes work on the deck at the time of the accident.  To answer this question, the Court must first construe the relevant statutory provisions.

   A.  Does 46 U.S.C. § 8104(e) forbid the employment of
       <u>members of the "maintenance department" in deck or engine duty?</u>

The first question that the Court must answer in deciding Janes' motion is whether the relevant statute, 46 U.S.C. § 8104(e), applies to prohibit Janes' employment in the cable changing operation.  Grand River argues that the statute does not apply to Janes because Janes was a member of an authorized maintenance department, not a member of either the engine department or the deck department, and the statute only applies to members of the deck or engine department.

Grand River's interpretation is in line with the Coast Guard's interpretation of the statute, as stated in the Marine Safety Manual and as incorporated in the Maumee's Certificate of Inspection.  The Coast Guard also argues in its amicus brief that § 8104(e) does not apply to members of a properly authorized maintenance department.  *See* Amicus Brief of the United States Coast Guard at 1 ("[t]he crossover provisions in 46 U.S.C. § 8104(e) do not apply to members of an approved maintenance department").  Janes argues that the statute does apply, either because Janes was engaged to work in the engine

13

department and was required to work in the deck department in contravention of 46 U.S.C. § 8104(e)(1)(B) or, in the alternative, as a member of the maintenance department he was "engaged to work alternately in the deck and engine departments" in contravention of 46 U.S.C. § 8104(e)(1)(A).

In interpreting a statute, the objective is to ascertain the intent of Congress. The first rule is to ascertain and give effect to the plain meaning of the language used. One provision of a statute should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless. *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). If the statute speaks clearly to the precise question at issue, the Court "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). If the statute is ambiguous, or does not directly address the issue, the Court should look to agency regulations "which are entitled to deference if they resolve the ambiguity in a reasonable manner." *Coeur Ala. Inc. v. Se. Ala. Conservation Council*, ___ U.S. ___, 129 S. Ct. 2458, 2469 (2009) (*citing Chevron*, 467 U.S. at 842). If the regulations are ambiguous, or do not directly address the issue, the Court turns to the agency's subsequent interpretation of the regulations. *Id.* Even if the agency's interpretation is not entitled to substantial deference under *Chevron*, because it was not contained in a regulation or enactment with the indicia of reliability of a regulation, the agency's interpretation may still be entitled to deference when the interpretation involves the agency's own regulatory regime and the agency's interpretation is reasonable and in accord with their published statements and prior practice. *Coeur Alaska*, 129 S.Ct. at 2472 -73, 2477.

The Court's first task, then, in applying the cases discussed above is to determine whether the statute at issue, 46 U.S.C. § 8104(e), speaks clearly to the issue or whether it

is ambiguous. A statute is ambiguous when it is susceptible to more than one reasonable interpretation. *Cf. Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997) (term "employee" ambiguous where it could as easily mean "was employed" as "is employed")..

Here the statute at issue states that:

(e) (1) a seaman may not be–

>    (A) engaged to work alternately in the deck and engine departments; or

>    (B) required to work in the engine department if engaged for deck department duty or required to work in the deck department if engaged for engine department duty...
>    ...

46 U.S.C. § 8104(e)(1). The plaintiff interprets this statute to require that any seaman who does any work in either the engine department or the deck department must work only in that department. Under the plaintiff's interpretation, section 8104(e)(1)(B) prevents a shipowner from hiring a seaman to work in one department and then requiring him to work in the other, and section 8104(e)(1)(A) prevents a shipowner from hiring a seaman to work in both departments. Since members of the maintenance department are hired to potentially do work in both the deck and the engine departments, as well as in other tasks, the plaintiff argues that this is a violation of section 8104(e)(1)(A)'s requirement that a seaman not be "engaged to work alternately in the deck and engine departments." The plaintiff also interprets section 8104(e)(1)(B) as prohibiting shipowners from instituting a maintenance department, because the members of that department would be "engaged for deck department duty" but required to work in the engine department or would be "engaged for engine department duty" but required to work in the deck department.

The defendant and the amicus interpret the statute differently. They essentially interpret section 8104(e)(1)(A) as forbidding a shipowner to create or implement a "deck-engine" department or to require the members of the "deck department' to do engine

15

department work or requiring members of the "engine department" to do deck department work. The Coast guard and the defendant argue that because the members of the maintenance department are not assigned to either the deck department or the engine department, but rather are assigned to a third department, the maintenance department, § 8104(e)(1)(B) does not apply to them. The defendant and amicus also argue that § 8104(e)(1)(A) would only apply to forbid the assignment of maintenance department personnel to alternate between deck department and engine department watches on a routine basis, and does not apply to occasional staffing decisions to have maintenance personnel engaged in deck department duties or engine department duties.[2]

    1. <u>Did the defendant violate 46 U.S.C. § 8104(e)(1)(A)?</u>

As to the first subsection of the statute, 46 U.S.C. § 8104(e)(1)(A), the Court finds that the subsection is not ambiguous and that the defendant's interpretation of the statute is correct. The statute forbids a shipowner from engaging a seaman "to work alternately in the deck and engine departments." The term "alternate" is defined in the dictionary as "occurring or succeeding by turns: one following the other in time: by turns first one then the other." Webster's Third New International Dictionary (1993). This supports the Coast Guard's interpretation of § 8104(e)(1)(A) to only forbid the assignment of maintenance department personnel to "alternate between deck department and engine department watches on a routine basis." The plaintiff's interpretation, on the other hand, would make the word "alternate" superfluous, which would violate the rule against superfluities. *See*

---

[2] The Coast Guard's Marine Safety Manual explicitly permits the establishment of a maintenance department. In the manual, the Coast Guard interprets section 8104 as to not apply to forbid crossover of persons assigned to the maintenance department. United States Coast Guard, Marine Safety Manual, Volume III, Marine Industry Personnel, May 27, 1999, p. 20-9. The manual states that "[e]ngagement of maintenance-persons with the intention of assigning any individual alternately between deck and engineering watch sections on a routine basis would be considered a violation of 46 U.S.C. 8104(e)." *Id.*

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (the rule against superfluities requires that a statute be construed "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'")(quoting 2A N. Singer, Statutes and Statutory Construction, § 46.06, pp. 181-186 (rev. 6th ed. 2000)).  The Court adopts the defendant's and Coast Guard's interpretation of the § 8104(e)(1)(A) because it gives effect to all the words of the subsection, and therefore holds that employing Janes to perform limited deck and engine duties was not an engagement to "work alternately in the deck and engine departments" and therefore did not violate 46 U.S.C. § 8104(e)(1)(A).[3]

    2. <u>Did the defendant violate 46 U.S.C. §8104(e)(1)(B)?</u>

As to the second subsection of the statute, 46 U.S.C. § 8104(e)(1)(B), the Court finds that the statute is ambiguous and that both the defendant's and the plaintiff's interpretations of 46 U.S.C. § 8104(e)(1)(B) are reasonable ones and are supported by the language of the statute.  First, the Court notes that neither "deck department duty" nor "engine department duty" are defined in the statute.  "[E]ngaged for engine department duty" can be fairly interpreted to mean that the seaman was hired to perform duties that include duties that fall under the engine department, as well as other duties.  "[E]ngaged for engine department duty" can also be fairly interpreted as only covering personnel assigned to the engine department and members of that watch, as contended by the defendant and the Coast Guard.  Thus, 46 U.S.C. § 8104(e)(1)(B), is ambiguous.

---

[3] The plaintiff is free to attempt to prove at trial that the defendant's staffing of the Maumee in fact violated § 8104(e)(1)(A) by offering evidence showing that the maintenance department personnel on the Maumee in fact "alternate[d]" between the deck and engine department.  This is not, however, a determination the Court can make on the present record for purposes of summary judgment.

17

As the relevant statutory language is ambiguous, the Court must determine what level of deference, if any, should be accorded the Coast Guard's interpretation of the statute. The Coast Guard's interpretation of 46 U.S.C. § 8104(e), as contained in the Marine Safety Manual and the Maumee's COI, is not strictly entitled to deference under *Chevron* because its interpretation is not contained in a regulation or other form intended to have the force of law. Nonetheless, the agency's interpretation of the statue is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) where the form and content of the ruling gives it power to persuade. *See United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (agency's interpretation entitled to deference given specialized expertise, broader investigation and information and value of uniformity); *Coeur Alaska,* 129 S.Ct. at 2472-73 (2009) (deference given when agency interprets own regulatory scheme).

The Coast Guard has an undeniable expertise in the matters at issue here. Congress has given the Coast Guard the power to enforce all applicable federal laws on, under, and over the high seas and to promulgate and enforce regulations for the promotion of safety. 14 U.S.C. § 2. The Secretary has delegated the responsibility for establishing manning levels for various types of vessels to the U.S. Coast Guard Officers in Charge, Marine Inspection ("OCMI"). 33 C.F.R. § 1.01-20. The OCMI is also vested with the authority to approve requests for changes in the required crew composition after consideration of the applicable laws, regulations, and other factors. 46 C.F.R. § 15.501

The Court finds that the Coast Guard's interpretation of 46 U.S.C. § 8104(e)(1)(B) is entitled to deference under the standards articulated by the Supreme Court in *Skidmore, Mead* and *Coeur Alaska*. The Coast Guard has specialized expertise in the area of determining manning requirements for the safe operation of inspected vessels under 46 U.S.C. § 8101; it administers a complex and comprehensive set of statutes and regulations;

its position is apparently unchanged and certainly not the product of a litigation decision but rather appears to be a reasoned attempt to interpret the statute. Furthermore, the Coast Guard's interpretation is in line with the interpretation given the statute by the collective bargaining agreement and what appears to be the general practice in the area. Because the Coast Guard's interpretation of 46 U.S.C. § 8104 is a reasonable interpretation of the statute by the administrative agency entrusted with administering the statute and is supported by the language of the statute, the Court will defer to that interpretation. The Court holds that employment of maintenance personnel to perform duties in either the engine department or the deck department is not barred by 46 U.S.C. § 8104(e)(1)(B) and that therefore the defendant did not violate 46 U.S.C. § 8104(e)(1)(B).

B. <u>Was Janes a member of the engine department?</u>

Janes' subsidiary argument, that he was in fact a member of the engine department and was required to perform deck department duty, can be disposed of more easily. This argument involves disputed factual issues, making summary judgment inappropriate. On a motion for summary judgment, the Court must consider all evidence and construe all inferences in the light most favorable to the non-moving party, here the defendant. The Court holds that, at the very least, defendant has produced evidence sufficient to create a factual issue as to whether Janes was a member of the engine department. The evidence submitted by plaintiff in support of his argument that he was engaged in the engine department can merely create a question of fact as to the issue; it cannot justify summary judgment in favor of the plaintiff.

## CONCLUSION

The Court holds that, for the reasons stated above, 46 U.S.C. § 8104(e)(1) does not by its terms forbid the creation of a maintenance department or the employment of members

of the maintenance department in either the deck or the engine department on an occasional and non-exclusive basis. The plaintiff's motion for partial summary judgment on liability is therefore denied because the staffing of the Maumee does not on its face violate any safety statute.[4]

### ORDER

For the reasons stated above, defendant's motion for leave to file attached supplemental brief (docket no. 42) is **GRANTED**, plaintiff's motion to file supplemental brief (docket no. 44) is **GRANTED**, and plaintiff's motion for partial summary judgment (docket no. 23) is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 30, 2009
I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager

---

[4]Because the Court finds the statute does not apply to Janes, at least on the record before it, the Court need not and does not reach the remaining issues raised by the parties.